**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**
Case No. 09-22866-CIV-MOORE/GOODMAN

STEVEN ANTHONY MITCHELL,

    Plaintiff,

v.

WALTER A. McNEIL, *et al.*,

    Defendants.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS' <u>MOTION FOR SUMMARY JUDGMENT</u>

THIS MATTER is before the Court on the Joint Motion of Defendants, Tremaine Sealy, Luis Zavaleta and Jason Tyus (collectively "Defendants"),[1] for Summary Judgment. (DE# 124, 1/7/2010.) Having carefully reviewed the applicable filings and the law, and for the reasons stated below, I respectfully recommend that the District grant summary judgment to the Defendants on all claims advanced against them by Plaintiff, Steven Anthony Mitchell ("Mitchell").

**I.    Introduction**

This is a *pro se* case filed under 42 U.S.C. §1983, alleging claims for retaliation under the First Amendment and cruel and unusual punishment and deliberate

---

[1] There are three additional, non-served defendants to this lawsuit, identified by Plaintiff as Captain Walter Mejia, Sergeant Figueroa, and Senior Classification Officer Rivera. (DE# 94, p. 2.) In the past, this Court ordered the U.S. Marshal to effect service of process, but only on Sealy, Zavaleta, and Tyus. It appears that this service issue might have arisen because there were no active claims against the non-served defendants when the order to perfect service was issued. However, it is simply not clear from the record why these other three defendants named in the Third Amended Complaint were never served with that complaint. There is nothing in the record resolving the claims made against them. Magistrate Judge William C. Sherrill, Jr., of the Northern District of Florida, previously ordered Plaintiff to file certificates of service for his Third Amended Complaint and for any served defendants thereafter to file confirmation of their receipt of this complaint. (DE# 95, 10/30/2008.) On December 1, 2008, counsel for Sealy, Zavaleta, and Tyus acknowledged receipt, but noted that the three other defendants have not been served. (DE# 97.) To address this issue, I will enter a separate order instructing the U.S. Marshal to attempt service on the three other defendants at the addresses given by Plaintiff in his Third Amended Complaint and to provide a report to the court on the results.

indifference under the Eighth Amendment.  (Def.'s Mot. Sum. Judg. p. 1, DE# 124, 1/7/2010; Def.'s Traverse Br. ¶58, DE# 138, 4/19/2010. *See also generally* Pl.'s Third Am. Compl., DE# 94, 10/22/2008; Order dated Sept. 22, 2009, dismissing claims for daily Kosher meals and injunctive relief, DE# 116.)  Mitchell seeks compensatory damages against all named defendants to his lawsuit in the amount of $500,000.00, plus punitive damages against only some.[2]  (DE# 94, §VII.)  Mitchell does not seek nominal damages in his Third Amended Complaint.  Mitchell was a prisoner serving time with the Florida Department of Corrections ("FDOC") when his claims arose, but according to his recently filed Change of Address Request, Mitchell was released from the FDCO's custody on July 3, 2010.  (DE# 146, 8/11/2010.)

Mitchell's lawsuit has been pending for over several years and has accumulated an extensive and complicated history. I have outlined (below) a summary of events pertinent to this motion.

## II.     Procedural History

This case was originally filed on August 21, 2006, here in the Southern District of Florida, was transferred to the Northern District of Florida on June 6, 2006, but then transferred back to the Southern District of Florida on September 22, 2009.  (DE# 116; Case No. 1:06-cv-22080, DE# 1 & 65.)  Throughout the course of this lawsuit, Mitchell has filed numerous amended complaints.  Though his current complaint is styled as his Third Amended Complaint, it is actually the *seventh* complaint filed between the two case numbers that have been opened for this matter.  (*See* 1:06-cv-22080, DE# 1, 11, 16, 40, & 53;  1:09-cv-22866, DE# 87, 94.)  Defendants answered the Third Amended Complaint (hereafter "Complaint") on December 29, 2008.  (DE# 102.)

On January 7, 2010, Defendants filed their Joint Motion for Summary Judgment.  (DE# 124.)  This motion was referred to me for a report and recommendation on July 29,

---

[2]     *Infra* note 5.

2

2010. (DE# 144.) Mitchell filed his Pro Se Traverse Brief to Defendants Motion for Summary Judgment on April 19, 2010. (DE# 138.) Defendants filed a Motion for Enlargement of Time to Serve Reply in Support of Summary Judgment on May 3, 2010, but I entered an order denying it as moot in light of the August 5, 2010, telephonic representation by Defendants' counsel, Daniel A. Jones, that Defendants no longer intended to file a reply. (DE# 139, 147.)

On May 11, 2010, Defendants filed a motion to strike certain exhibits from Mitchells' Traverse Brief, and on August 16, 2010, I granted this motion in part and denied it in part. (DE# 140, 149.) Mitchell also filed a Motion Requesting Appointment of Counsel on June 17, 2010, which I denied on August 12, 2010. (DE# 141, 148.)

In their motion, Defendants attack Mitchell's claims both substantively and procedurally. Defendants argue that Mitchell has failed to come forward with evidence of any First or Eighth Amendment violation sufficient to survive summary judgment, and that even if he did, Defendants are entitled to qualified immunity. Defendants also argue that Mitchell's claims are barred by the Prison Litigation Reform Act ("PLRA") and the rule in *Heck v. Humphrey*, 512 U.S. 477 (1994).

Because certain of these arguments were immediately recognizable as stronger than others, and since it is only necessary that summary judgment be justified on a single ground, I did not find it necessary to analyze all of Defendants' arguments. *See also Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1088 n.21 (11th Cir. 2007) (holding an appellate court may affirm summary judgment on any ground supported by the record).

### III. Applicable Legal Standards
#### a. Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted:

3

> . . . if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.

The moving party bears the burden of meeting this standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). All evidence considered on motion for summary judgment must be "viewed in a light most favorable to the nonmoving party." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994) (citing *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991). A nonmoving party is under no obligation to respond to a motion for summary judgment that is not properly supported with evidence. *Adickes*, 398 U.S. at 160.

This does not mean a court is "constrained to accept all the nonmovant's factual characterizations and legal arguments." *Beal*, 20 F.3d at 458-59. Once the moving party has presented a properly supported motion for summary judgment, the nonmoving party cannot rely on the existence of a mere "scintilla of evidence" to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S 574, 586 (1986) ("[T]he party opposing summary judgment must do more than simply show that there is some metaphysical doubt as to the material facts"); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) ("Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action'") (quoting FED. R. CIV. P. 1).

"Rule 56 mandates the entry of summary judgment, upon motion, against a party who fails to make a showing sufficient to establish an element essential to his case on which he bears the burden of proof at trial." *Schechter v. Georgia State Univ.*, 341 F. App'x 560, 562 (11th Cir. 2009) (citing *Celotex Corp.*, 477 U.S. at 322)). "If no

4

reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." *Beal*, 20 F.3d at 458-59. In sum:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather it must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

FED. R. CIV. P. 56(e)(2). *Accord Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).

### b. Constitutional Claims under §1983

To state a claim under 42 U.S.C. §1983, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). *Accord Cummings v. DeKalb County*, 24 F.3d 1349, 1355 (11th Cir. 1994). "§1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Cummins*, 24 F.3d at 1355 (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

### c. Prison Litigation Reform Act

Mitchell's claims are subject to the statutory requirements of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), which states in pertinent part that:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

*See also Napier v. Preslicka*, 314 F.3d 528, 532 (11th Cir. 2002) ("Federal civil action" means all federal claims, including constitutional claims) (citing *Harris v. Garner*, 216 F.3d 970, 984 (11th Cir. 2000) (en banc)); *Siglar v. Hightower*, 112 F.3d 1919, 193-94 (5th Cir. 1997) (sore ear that lasted for three days is insufficient physical injury); *Cannon*

5

*v. Burkybile*, No. 99 C 4623, 2000 WL 1409852, at *6 (N.D. Ill. Sept. 25, 2000) (allegations of "headaches, insomnia, stress, and stomach anxiety do not sufficiently meet physical injury requirement"); *Harris v. Garner*, 216 F.3d 970, 971 (11th Cir. 2000) ("We granted rehearing en banc in this case to decide whether the provision applies to lawsuits that are filed while the plaintiff is a confined prisoner but which are not decided until after he is released from confinement. We hold it does"), *cert. denied*, 532 U.S. 1065.

### d. *Heck v. Humphrey*

In *Heck v. Humphrey*, the United States Supreme Court held that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S 477, 486-87 (1994). A "conviction" includes a finding of guilty in a prison disciplinary proceeding. *Edwards v. Balisok*, 520 U.S. 1584, 1588-89 (1997). *Accord Anderson v. Tyus*, No. 4:06-CV-4-SPM/WCS, 2009 WL 903592, at *6 n.4 (N.D. Fla. March 30, 2009).

### e. Deliberate Indifference

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishment." U.S. CONS. amend. VII. *See also Robinson v. California*, 379

U.S. 66,667 (1962) (holding Eighth Amendment cruel and unusual punishment clause made applicable to states by Fourteenth Amendment Due Process Clause).  Cruel and unusual punishment includes deliberate difference to a prisoner's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

> In order to prove deliberate indifference a prisoner must shoulder three burdens. First, she must satisfy the objective component by showing that she had a serious medical need. Second, she must satisfy the subjective component by showing that the prison official acted with deliberate indifference to her serious medical need. Third, as with any tort claim, she must show that the injury was caused by the defendant's wrongful conduct.

*Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007) (internal citations omitted).

Not all medical needs constitute "serious medical needs."  *See Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).  *See also Feldkamp v. Kaleckini*, No. 8:09-cv-01371-EAK-MAP, 2010 WL 3338939, at *3 (M.D. Fla. Aug. 23, 2010) (holding only certain types of broken bones demand immediate medical attention).  A "serious medical need" is defined by the Eleventh Circuit as "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Id.* (citing *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40. F.3d 1176, 1187 (11th Cir. 1994)).  The medical need must "'one that, if left unattended 'pos[es] a substantial risk of serious harm.'"  *Farrow*, 320 F.3 at 1243 (quoting *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (quoting *Estelle*, 429 U.S. at 104)) (brackets and alteration in original).

To establish "deliberate indifference" a prisoner must prove three facts:  "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence."  *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005) (quoting *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)) (alternation in original).  *See also Gayle v. Pasco County Sheriff's Office*, No. 8:06-cv-1159-T-24 TGW,

7

2007 WL 2695820, at *9 (M.D. Fla. Sept. 10, 2007) (noting subjective knowledge does not exist absent proof defendant actually inferred that risk of serious harm existed regardless of whether objectively sufficient facts existed)  Generally, the delay or refusal to provide medical care is at issue where deliberate indifference is raised by a plaintiff. *See, e.g., Goebert*, 510 F.3d at 1327 (allegation that prison official was deliberately indifferent to serious medical need by failing to respond to pregnant inmate's complaint she had been leaking fluid for more than a week and the problem was getting worse). Deliberate indifference can, however, include "intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 105.

To prevail on a deliberate indifference claim against a prison official in his personal capacity, a prisoner must show that the official was "personally involved in acts or omissions that resulted in the constitutional deprivation. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995) (finding insufficient causal connection between jailer's failure to make rounds as often as usual and inmate on inmate violence) (citing *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986)).

### f. Retaliation

The First Amendment forbids prison officials from retaliating against prisoners for exercising their right of free speech. *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003).  To prevail, the inmate must establish three elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. *Smith v. Mosley*, 532 F.3d 1270,1276 (11th Cir. 2010).  This includes informal grievances regarding a prisoner's conditions of confinement.  *See id.* n.17 (considering a letter sent outside the formal prison grievance procedures).

A prisoner is required to show affirmative evidence of a retaliatory motive once a properly supported motion for summary judgment is made. *Farrow*, 320 F.3d 1235, 1248-49. *See also Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) (finding that to survive a motion for summary judgment in a case against a public official requiring a wrongful motive, "the plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive").

### g. Free Exercise of Religion

The First Amendment right to free exercise of religion applies to prisoners. *Shepard v. Peryam* 657 F. Supp. 2d 1331, 1343 (S.D. Fla. 2009) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)). Prisoners, however, do not have an absolute right to obtain food specially prepared specially according to their religious views. *E.g., Baranowski v. Hart*, 486 F.3d 112, 125 (5th Cir. 2007) (holding a prison may refuse to provide a Jewish inmate with Kosher food where competing governmental interests make such provision an unjustified burden). *Accord Linehan v. Crosby*, 346 F. App'x 471, 472-73 (11th Cir. 2009). *See also Russell v. Wilkinson*, 79 F. App'x 175, 177 (6th Cir. 2003) ("An inmate's right to freely exercise his religion may be subject to reasonable restrictions while he is incarcerated")  A jail/prison rule may infringe on an inmate's First Amendment rights if to do so is necessary to protect legitimate governmental interests. *Shepard*, 657 F. Supp. 2d at 1343.

### IV.   Mitchell's Allegations

The following is taken from Mitchell's Third Amended Complaint, exhibits to his Traverse Brief, and his motion to amend his original complaint. (DE# 94, 138; 1:06-cv-22080, DE# 16.)

### a. Luis Zaveleta

In or around February 2004, Mitchell was assigned to a disciplinary work squad (the "DR squad") at Everglades Correctional Institution ("ECI"). (DE#94, ¶ 5.) Zavaleta was the correctional officer who supervised this squad. (*Id.* at ¶ 2.) Mitchell believes that during his time on the DR squad, Zavaleta[3] committed three violations of his constitutional rights. (*See generally id.* at ¶¶ 1-34.)

First, Mitchell claims that Zavaleta violated his First Amendment rights when Zavaleta wrote two false disciplinary reports[4] against Mitchell in retaliation for Mitchell filing a grievance against Zavaleta with Zavaleta's supervisor. (*Id.* at ¶ 24.) According to Mitchell, his attempt to appeal these disciplinary reports failed. (*Id.* at ¶ 23.)

Second, Mitchell claims that Zavaleta violated his Eighth Amendment right to be free from cruel and unusual when he showed deliberate indifference to Mitchell's medical need for extra bathroom breaks by denying him certain bathroom breaks and assigning the DR squad additional hours of work on account of Mitchell's medical need. (*Id.* at ¶ 11.) This supposedly caused Mitchell physical pain and discomfort. (*Id.* at 10.) Zavaleta also allegedly tried to make the other DR squad members believe that it was Mitchell's fault the squad was being assigned extra duties. (*Id.* at 7.)

Third, Mitchell claims that Zavaleta violated his Eighth Amendment right to be free from cruel and unusual punishment by forcing him to climb a twenty-foot ladder. (*Id.* at 33.) Mitchell states that he showed Zavaleta a pass from a medical doctor that excused him from working or climbing in high places, and that forcing him to do so

---

[3] Mitchell does not specify whether he is suing Zavaleta in his personal or official capacity. (*Contra* DE#94, ¶ 37 (specifically stating he is suing Sealy and Tyus in both capacities).) I interpret his claim as against Zavaleta in his personal capacity only. *See, e.g., Lundgren v. McDaniel*, 814 F.2d 600, 603 (11th Cir. 1987) (noting that where damages are sought against a defendant personally, that the claim is made against the defendant individually).

[4] These disciplinary reports were identified in Defendants' statement of material facts in support of their motion for summary judgment as #401-040991 for violation 6-1, Disobeying Order, dated July 1, 2004, and #401-040989 for violation 1-4, Disrespect to Officials, dated July 1, 2004. (DE# 125, ¶¶ 5-6.)

anyways constituted deliberate indifference to his medical needs. (*Id.* at 30.) Mitchell has not filed a copy of the pass with the Court and precisely what this pass may have said is largely unknown.

In support of his allegations concerning Zavaleta, Mitchell filed three affidavits. (Traverse Br. Ex. L, DE# 94; Affidavits of Walter Morris and Albert Eckardt, Case No. 1:06-cv-22080, DE# 16.)

The first affidavit is his own. In the affidavit, Mitchell primarily repeats the allegations of his Third Amended Complaint, but he also appears to allege that, contrary to Disciplinary Report #401-04991, he never failed to obey any order to march and was instead ordered out of line by Zavaleta. (DE# 94, Ex. L, ¶ 2.) Mitchell also admitted to the disrespect to Zavaleta that formed the basis for Disciplinary Report #401-040989, but states that his disrespectful comments were made because he believed Zavaleta had violated his Eighth Amendment rights. (*Id.* at ¶ 23.)

The second and third affidavits were made by Mitchell's fellow inmates, Walter Morris and Albert Eckardt. (Case No. 1:06-cv-22080, DE# 16.) Morris and Eckhardt both state that they witnessed Zavaleta order Mitchell to climb a twenty-foot ladder despite Mitchell having shown Zavaleta a medical pass excusing him from such tasks. (*Id.*)

### b. Tremaine Sealy

In April of 2006, Mitchell was placed into disciplinary confinement during the Jewish Passover holiday. (DE# 94, ¶ 35.) During this time, he alleges to have requested Passover meals from several prison guards, including Sealy. On one particular night, Sunday, April 16, 2006, instead of complying with this request, Sealy allegedly forced a tray with macaroni, bread, and cake through the flap of his cell door, and told Mitchell if he did not take the food Sealy would throw it all over the floor of his cell on each day of Passover. (*Id.* at ¶38-39.)

Mitchell claims he subsequently filed a grievance against Sealy with Inspector Pesante about this incident. (*Id.* at ¶41.) In retaliation for this grievance, Sealy purportedly "tore up" Mitchell's cell on two occasions and wrote him a false disciplinary reports for possession of contraband. (*Id.* at ¶44.) Mitchell claims that an unidentified officer threw his yarmulke in the toilet during a "cell shake down." (*Id.* at ¶45.) After this incident, Mitchell states that he complained but that another officer conducted a "mock investigation" which did not find enough evidence to justify disciplining any of the officers. (*Id.* at ¶47.) Mitchell does not claim any physical injury due to these incidents, but he does allege that these events caused him to experience fear.

Mitchell is suing Sealy individually on First Amendment grounds for denial of free exercise of religion (serving him non-Kosher food) and for retaliation (disciplinary report).[5] (*Id.* at ¶54.) In support of his allegations against Sealy, the only relevant evidence offered by Mitchell is his own affidavit, which contends that the incident happened as he described. (DE# 138, Ex. I ¶11.)[6]

### c. Jason Tyus

Mitchell alleges that on several occasions he asked Tyus to comply with his request to obtain kosher meals from the prison kitchen. (*Id.* at ¶55.) Tyus allegedly retaliated against Mitchell for later filing grievances (for failing to honor his kosher meal requests) against him and by personally authorizing Sealy's shake downs of his cell on two occasions. (*Id.* at ¶56.)

---

[5]   While Mitchell's Third Amended Complaint does not appear to allege an independent cause of action relating to his yarmulke (*See* DE# 94, ¶ 45), it is useful to note that any such claim would be too vague to constitute a viable cause of action because it does not identify the person who allegedly committed the act.

[6]   Mitchell also provided several periodical publications describing Jewish law with regard to Kosher food during Passover. (*E.g.*, DE# 138, Ex. D.) I have absolutely no reason to disbelieve that Mitchell's religious convictions were genuinely held at this stage of the proceedings. However, this information is not relevant to the determination of this motion.

Mitchell is also suing Tyus individually on First Amendment grounds for denial of free exercise of religion (i.e., providing non-Kosher food) and for retaliation (disciplinary report). (*Id.* at ¶ 68.) In addition to compensatory damages, Mitchell has also asked this Court for punitive damages against Tyus only.[7]

In support of these allegations, Mitchell again only offers his own affidavit, which confirms that he protested his receipt of non-Kosher meals to Tyus but Tyus did nothing to see that he received Kosher meals in the future.

**V.   Analysis**

As an initial matter, I must recommend that Sealy and Tyus be granted summary judgment on any claims purporting to be against them in their *official capacities*. Sealy and Tyus work for the Florida Department of Corrections, so suing them in their official capacities is the same as directly suing the State of Florida. *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State"). Such a suit, when it seeks damages, is barred by the Eleventh Amendment. *E.g., Smith v. Haley*, 401 F. Supp. 2d 1240, 1244 (M.D. Ala. 2005) (summary judgment appropriate under Eleventh Amendment on § 1983 claim for damages against prison official in his official capacity).

   **a.  Louis Zavaleta**

Because I find that the undisputed facts show no genuine issue of material fact and that Zavaleta is entitled to judgment as a matter of law, I respectfully recommend that Zavaleta be granted summary judgment on all claims against him.

---

[7] While at the very end of his Third Amendment Complaint Mitchell mentions punitive damages generally, within the body of his complaint he specifically mentions he is seeking punitive damages against Tyus, and non-served defendants Mejia, Figuera, and Rivera. As Mitchell's complaint appears to save the harshest words for these four men, this Court will not imply that he intended to seek punitive damages against Zavaleta or Sealy.

### *First Amendment Retaliation Claim*

Mitchell claims that Zavaleta retaliated against him for exercising his First Amendment right to complain about Zavaleta's treatment of him by filing two false disciplinary reports against him. However, the undisputed evidence -- Mitchell's own deposition testimony and the copies of the adjudications and appeals relating to these disciplinary reports provided by Zavaleta -- shows that Mitchell was adjudicated guilty of the charges in those disciplinary reports. (Mitchell Dep. 97:1-100:20, DE# 124-2, p. 48; Exs. F-G, P-BB, DE# 124.) For instance, Mitchell testified that:

> Q. Okay. And do you know how you plead to the first DR, the one that was the failure to obey an order?
> A. Yeah, not guilty.
> Q. Was a hearing held?
> A. Yes, sir.
> Q. And what was the outcome of the hearing?
> A. I was adjudicated.
> . . .
> Q. And then, did you lose gain time as a result of that conviction?
> A. Yes, sir.
> . . .
> Q. Okay, the second DR, the one for disrespect to an officer; is that what your understanding of that DR was for?
> A. Correct, sir.
> Q. Okay. Do you recall what your plea was in that?
> A. Not guilty.
> Q. And was there a hearing held?
> A. Yes.
> Q. And what was the outcome of the hearing?
> A. I was adjudicated of that at the same time as the other one.

(DE# 124-2, p. 2.)

Mitchell has not even attempted to offer evidence to explain away either his deposition testimony or the disciplinary report documentation offered by Zavaleta. There is no claim, let alone evidence, that these adjudications have been reversed or overturned. Mitchell's First Amendment claim is therefore not cognizable under *Heck v. Humphrey*, 512 U.S 477, 486-87 (1994), and I recommend that he be granted summary

14

judgment on this claim.  *See also Austin v. City of Tuskegee*, 335 F. App'x 856, 857 (11th Cir. 2009) (affirming grant of summary judgment on § 1983 claim because a judgment in plaintiff's favor "would necessarily imply the invalidity of his conviction").

### *Eighth Amendment Deliberate Indifference Claims*

Mitchell has two Eighth Amendment claims for deliberate indifference. Mitchell alleges Zavaleta was deliberately indifferent to his medical needs by denying him extra bathroom breaks, by assigning Mitchell's DR Squad extra work and also by making him climb a twenty-foot ladder.

The record is unclear about the precise medical problems from which Mitchell claims he suffers.  The medical records provided by Defendants are difficult to decipher, but what was legible suggests that Mitchell did in fact suffer from seizures and had seen a doctor for urological problems.  (*E.g.*, DE# 124-6, Ex. CC, p. 43 & 52.)  Given the existence of these records, and the fact Zavaleta has not contested the issue, I find that Mitchell has presented a genuine issue of material fact as to the first level of the deliberate indifference inquiry by demonstrating he suffers from serious medical conditions that result in seizures and a genuine need for extra bathroom breaks.

Even assuming that Zavaleta failed to give Mitchell as many bathroom breaks as he medically required, required him to complete arduous tasks with the DR squad or forced him to climb a twenty-foot ladder, however, there is no evidence that Zavaleta subjectively understood that any of these acts created a risk of serious harm and therefore no evidence that he acted with deliberate indifference.

### *Insufficient Bathroom Breaks*

Viewing the evidence in a light most favorably to Mitchell, there is evidence that Zavaleta knew Mitchell had some sort of urological medical problem, denied him at least some requested bathroom breaks, and worked Mitchell's DR squad hard.  (DE# 138, Ex. L, ¶ 5.)  There is no evidence, however, that Zavaleta subjectively understood that any

of this posed a serious medical risk to Mitchell. In fact, the only available evidence is to the contrary. By his own affidavit, Zavaleta stated that "[i]nmate medical information is confidential and I had no knowledge of any medical restrictions or limitations of inmate Anthony Mitchell." (DE# 124-3, ¶ 15.) Moreover, Mitchell himself admitted at deposition that he was medically cleared to serve on the DR squad and that Zavaleta played no role in his being placed in the squad. (DE# 124-2, 36:23-37:7 & 111:6-15.)

Other than to claim that he showed Zavaleta the pass and that the pass related that Mitchell suffered from urination problems, Mitchell has presented no evidence that this pass instructed Zavaleta to give him more bathroom breaks than he did. The only evidence as to what information Zavaleta knew is his own affidavit, which shows he was not privy to specific inmate medical information.

In other words, there is no evidence that there even existed sufficient objective facts to alert Zavaleta that denying Mitchell as many bathroom breaks as he desired created a serious medical risk of injury, let alone any showing of the required subjective understanding. *See Gayle*, 2007 WL 2695820 at *10 (granting summary judgment on similar claim in part because plaintiff failed to demonstrate even the existence of sufficient objective facts from which a nurse could draw an inference that a substantial risk of harm existed). I therefore respectfully recommend that Zavaleta be granted summary judgment on Mitchell's Eighth Amendment claim relating to any urological problems from which he suffers.[8]

---

[8] In the alternative, I believe that this claim is also barred under the PLRA for failure to allege and proffer competent evidence of sufficient physical injury. Mitchell has provided evidence that he experienced some pain from insufficient bathroom breaks, but pain alone is insufficient to satisfy the PLRA's physical injury requirement. *Osterback v. Johnson*, No. 2:97-cv-314-FTm-16DNF, 2003 WL 25571396, at *6 (M.D. Fla. June 2, 2003). *See also Harris v. Garner*, 216 F.3d at 971 (PLRA applies to claims despite subsequent release).

### *Climbing the Twenty-Foot Ladder*

The Morris and Eckardt affidavits establish a genuine issue of material fact as to whether Zavaleta was aware of Mitchell's seizure condition. (Case No. 1:06-cv-22080, DE# 16.) Mitchell has not, however, alleged that he suffered *any* physical injury as a result of being forced to climb this ladder and he certainly has not proffered any competent evidence about a physical injury. Mitchell's affidavit only states that "my fears were very intense and real." (DE# 138, Ex. L, ¶12.) I therefore recommend that Zavaleta be granted summary judgment on Mitchell's Eighth Amendment claim relating to his being forced to climb a twenty-foot ladder. 42 U.S.C. §1997e(e).

### b. Tremaine Sealy

Because I find that the undisputed facts show no genuine issue of material fact and that Sealy is entitled to judgment as a matter of law, I respectfully recommend that Sealy be granted summary judgment on all claims against him.

Mitchell claims that Sealy denied him his free exercise of religion by serving him non-Kosher meals when he was entitled to Kosher meals and by retaliating against him for filing grievances against Sealy, all in violation of the First Amendment. In addition to making other factual and legal arguments in support of his motion for summary judgment, Sealy has objected that both of Mitchell's claims are barred by the PLRA for failure to allege a physical injury. (DE# ¶¶ 15-18.) In response, Mitchell provided no obvious clarification (or evidence) suggesting that any of his claims against Sealy are premised on a physical injury. A careful analysis of the filings in this case did not reveal the existence of any evidence of physical injury.

I therefore find that Sealy's invocation of the PLRA is well taken in this regard and I recommend that Sealy be granted summary judgment on both the free exercise

claim and the retaliation claim currently pending against him.[9]  *See Allah v. Al-Hafeez*, 226 F.3d 247, 250 (3d Cir. 2000) ("§ 1997e(e) makes no distinction between the various claims encompassed within the phrase "federal civil action" to which the section applies") (affirming judgment on the pleadings as to claim for compensatory damages that was based on free exercise violation that caused no physical injury).  *See also Williams v. Brown*, 347 F. App'x 429, 436 (11th Cir. 2009) (holding compensatory damages barred as to retaliation claim without a physical injury).

### c.  Jason Tyus

For the same reason as above relating to Sealy,[10] I recommend that summary judgment be granted to Tyus on Mitchell's free exercise and retaliation claims.  The PLRA bars claims for compensatory and punitive damages absent evidence of a physical injury and Mitchell has not even alleged one, let alone provided evidence of it relating to Tyus.  *Williams*, 347 F. App'x at 436.  *See also Al-Amin v. Smith*, No. 607CV026, 2009 WL 4506571, at * 3 (S.D. Ga. Dec. 3, 2009) (allegation that a prisoner suffered "other physical injury" and an "aneurysm on his artery" as a result of First Amendment violation insufficient to constitute "physical injury" under PLRA).

## VI.   Conclusion

For the reasons discussed above, I respectfully recommend that the District Court grant summary judgment to all of the Defendants on all of Mitchell's claims against them.[11]

---

[9]  In the alternative, any retaliation claim against Sealy is also barred by *Heck*, 512 U.S. at 486-87.  In his Traverse Brief, Mitchell states that he was unsuccessful in reversing any of the adjudications against him based on the complained of incident reports that allegedly were handed down in retaliation.  (DE# 138, ¶ 62.)

[10]  *See also supra* note 9.

[11]  As noted above, however, my recommendation in no way touches upon the three non-served defendants named in this case.  Once these defendants are served, those claims will be considered in their own right.

### VII. Objections

Pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of this Report and Recommendation, until September 14, 2010, to serve and file written objections, if any, with the Honorable K. Michael Moore, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein. *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) (citing *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988), *cert. denied,* 488 U.S. 958).

RECOMMENDED, in Chambers, in Miami, Florida, this 31st day of August, 2010.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:
The Honorable K. Michael Moore
All counsel of record